IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

SHANE GRIFFIN                                                                PLAINTIFF

      v.                              Civil No. 6:14-cv-6108
CAROLYN W. COLVIN, Acting Commissioner
Social Security Administration                                               DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Shane Griffin, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") under the provisions of Titles II and XVI of the Social Security Act ("Act"). The Parties have consented to the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings. (ECF No. 5).[1] Pursuant to this authority, the Court issues this memorandum opinion and orders the entry of a final judgment in this matter.

## I.   Background:

Plaintiff protectively filed his applications for DIB and SSI on May 2, 2011, alleging an onset date of September 19, 2009, due to mastoid bone infection, hearing loss, facial paralysis, and high blood pressure. (Tr. 10, 150). For DIB purposes, Plaintiff retained insured status through September

---

[1] The docket numbers for this case are referenced by the designation "ECF No. __." The transcript pages for this case are referenced by the designation "Tr."

30, 2012. (Tr. 12, Finding 1). Plaintiff's application was denied initially and on reconsideration.

An administrative hearing was held on March 25, 2013, at which Plaintiff appeared with counsel and

testified. (Tr. 27-53). A vocational expert ("VE") was also present and testified. (Tr. 49-52).

On May 27, 2013, the Administrative Law Judge ("ALJ") entered an unfavorable decision.

(Tr. 10-20). In this decision, the ALJ determined Plaintiff had the severe impairments of bilateral

hearing loss, chronic otitis media status, and depression with anxiety features. (Tr. 12, Finding 3).

After reviewing all of the evidence presented, however, the ALJ determined Plaintiff's impairments

did not meet or equal the level of severity of any impairment listing. (Tr. 13, Finding 4).

The ALJ next evaluated Plaintiff's subjective complaints and determined his RFC. (Tr. 14-

18). The ALJ first evaluated Plaintiff's subjective complaints and found he was not entirely credible.

(Tr. 16-17). The ALJ then found Plaintiff retained the residual functional capacity ("RFC") to

perform the full range of work at all exertional levels, but with the following precautions:

> he must observe the standard syncopal precautions like no exposure to dangerous or
> moving machinery or unprotected heights and no driving. He is unable to perform
> tasks that require excellent hearing. Mentally, he is limited to unskilled work, or
> work where interpersonal contact is incidental to the work performed, the complexity
> of tasks is learned and performed by rote, involves few variables, requires little
> independent judgment, and the supervision required is simple, direct, and concrete.
> Additionally, he is unable to deal with the general public.

(T. 14).

With the help of the VE, the ALJ determined Plaintiff could not perform his past relevant

work ("PRW"). (Tr. 18, Finding 5). Based on the VE's testimony, the ALJ then found Plaintiff

could perform the requirements of the representative occupations of general laundry worker,

industrial cleaner, and hand packager. (Tr. 18-19, Finding 9). The ALJ then concluded Plaintiff

was not disabled. (Tr. 19, Finding 10).

-2-

On June 13, 2013, Plaintiff requested the Appeals Council review the ALJ's unfavorable decision, which denied the request on August 29, 2014. (Tr. 1-3). On September 22, 2014, Plaintiff filed the present appeal. (ECF No. 1). The Parties consented to the jurisdiction of this Court on September 22, 2014. (ECF No. 5). Both Parties have filed appeal briefs, and the case is ready for decision. (ECF Nos. 11, 13).

II.   **Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance, but it is enough a reasonable mind would find it adequate to support the Commissioner's decision. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record to support the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record to support a contrary outcome, or because the Court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

To determine whether a claimant suffers from a disability, the Commissioner uses a five-step sequential evaluation. She determines: (1) whether the claimant is presently engaged in a substantial

gainful activity; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the RFC to perform his PRW; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove there are other jobs in the national economy the claimant can perform.  20 C.F.R. §§ 404.1520(a)-(f)*; Cox*, 160 F.3d at 1206.  The fact finder only considers Plaintiff's age, education, and work experience in light of his RFC if the final stage of this analysis is reached.  *See* 20 C.F.R. §§ 404.1520, 416.920.

III.   **Discussion**:

Plaintiff argues the ALJ erred by: (1) not considering Listing 1.02, (2) not finding him disabled according to Listings 12.04 and 12.06, and (3) determining Plaintiff could perform the representative occupations identified at Step 5.  (ECF No. 11 at 5-20).

### A. Listing 1.02

Plaintiff claims the ALJ erred by failing to find his problems with balance satisfy the requirements of Listing 1.02.  (ECF No. 11 at 10).

Plaintiff has the burden to establish his impairment meets or equals an impairment listing. *See Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990).  The ALJ considered whether Plaintiff's ear conditions met a listing at Step 3 by discussing Listing 2.08, which applies to hearing impairments. (Tr. 13-14).  Listing 1.02, which applies when a claimant has a major dysfunction of a joint, was not addressed. The listing requires a major joint dysfunction characterized by:

[a] gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous

-4-

ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively;

OR

B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively.

20 C.F.R. Part 404, Subpart P, App. 1, § 1.02.

Plaintiff's impairments do not meet Listing 1.02's requirements. Plaintiff's knee and shoulder problems were the only evidence of a joint abnormality in the record. He underwent a successful knee arthroscopy and ligament reconstruction in June 2011, and a successful shoulder arthroscopy and labrum repair in September 2011. (Tr. 483-486, 495-496). Follow-up exams showed Plaintiff was doing well, and physical therapy was prescribed. (Tr. 497, 505). At a visit in January 2011, Dr. Michael Young noted Plaintiff was recovering well, had normal range of motion, and stated, "[Plaintiff] is trying to be active[,] he actually has been out doing some roofing and climbing and increased his activity." (Tr. 504). At the hearing, Plaintiff testified he did not wear a brace, and with his knee he could "put in a decent day's work ... it wouldn't halter [him] none." (Tr. 39). Even considering Plaintiff's balance problems in combination with his knee and shoulder conditions, there is no evidence in the record he could not ambulate or perform fine and gross movements effectively.

Accordingly, Plaintiff has not met his burden of establishing his impairments meet the requirements of Listing 1.02. *See Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004)

(holding "[t]he burden of proof is on the plaintiff to establish that his or her impairment meets or equals a listing").

### B. Listings 12.04 and 12.06

Plaintiff argues he meets the requirements of Listing 12.04 (affective disorders) and Listing 12.06 (anxiety-related disorders). (ECF No. 11 at 12-16)

Listing 12.04 and 12.06 require a medically documented disorder with a marked restriction in two of the criteria found in Paragraph B, or evidence of a complete inability to function. 20 C.F.R. Part 404, Subpart P, App. 1, §§ 12.04, 12.06. The ALJ addressed Listing 12.04 at Step 3 and made findings on the Paragraph B criteria. The ALJ determined Plaintiff had a mild restriction in the activities of daily living, moderate difficulties in social functioning, moderate problems with concentration, persistence, or pace, and had experienced no episodes of decompensation. (Tr. 14).

Plaintiff does not identify sufficient evidence of a depressive or anxiety-related disorder, even though he provides some discussion of the paragraph B criteria. (ECF No. 11 at 13-16). This is enough to reject his argument. *See Vandenboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir. 2005)(rejecting "out of hand" a social security appellant's conclusory assertion that the ALJ failed to consider whether he met the Listings where the appellant provided no analysis of the relevant law or facts).

Although Plaintiff had some documented problems with anxiety and depression, the record as a whole supports the ALJ's Paragraph B determination and Step 3 findings. Plaintiff testified he has never sought specialized mental health treatment and was capable of completing his daily activities, which included household chores and transporting his children to their activities. (Tr. 41, 46-47). At the time of the hearing, he had only recently started taking anxiety medications, and

stated his initial treatment at a community counseling center was helping. (Tr. 40, 48). On his Function Report in May 2011, he described activities such as helping his children with homework, completing household chores, meeting people to shoot pool about once a month, and stated had no problems with memory, concentration, or following instructions. (Tr. 179-185). He listed his primary treatment for anxiety was warm baths, which he reported helped. (Tr. 186). Dr. Mike Parker, a State psychiatrist, examined Plaintiff in August 2011 and reported Plaintiff was discouraged, but "not describing significant symptoms of depression." (Tr. 441). Dr. Parker also noted Plaintiff performed all his daily activities, although his pace was slowed by equilibrium problems, and had good communication skills and no problems with concentration or cognition. (Tr. 447). Dr. Winston Brown, a State non-examining physician, reviewed Plaintiff's case and opined Plaintiff had a mild restriction in performing the activities of daily living, a moderate restriction in social functioning, and a moderate restriction in concentration, persistence, or pace. (Tr. 477). Dr. Brown's opinion was affirmed by Dr. Diane Kogut in January 2012. (Tr. 507)

Accordingly, the undersigned finds the ALJ's Step 3 determination is based on substantial evidence.

### C. Step Five Determination

Plaintiff argues he cannot perform the jobs identified by the VE because his "problems with balance and frequent falls prohibit the occupations" and he cannot perform the lifting. (ECF No. 11 at 19).

The ALJ posed the following hypothetical to the VE:

[A]ssume a hypothetical individual with the same age, education, and vocational profile as the claimant. Assume the individual has no exertional limitations, and also assume precautions; may not work on unprotected heights, moving, or dangerous

machinery, or drive a vehicle.  I'm going to add that he cannot perform tasks requiring excellent hearing.  Mentally he's restricted to unskilled work, with no personal contact unless related to the work performed. Complexity of tasks as performed also requires little independent judgment, and the supervision required is simply direct.  He cannot deal with the general public ... Is there any alterative work for an individual with those specific limitations?

(Tr. 50-51).  In response, the VE testified the available jobs included general laundry worker, basic cleaner-worker, and hand packager.  (Tr. 51).

"A hypothetical question must precisely describe a claimant's impairments so that the vocational expert may accurately assess whether jobs exist for the claimant." *Newton v. Chater*, 92 F.3d 688, 694-95 (8th Cir. 1996).  Here the RFC described in the hypothetical addressed all of Plaintiff's impairments. The RFC included precautions for Plaintiff's equilibrium problems, accounted for his reduced hearing, and added restrictions to accommodate his mental impairments. The ALJ's RFC determination was supported by the physical RFC assessments of State non-examining physicians Dr. Karmen Hopkins and Dr. Valeria Malak, who opined Plaintiff had no exertional limitations, but should avoid moderate exposure to hazards or work requiring excellent hearing.  (Tr. 454-460, 565-571). The RFC determination was also consistent with Plaintiff's treatment notes, testimony, and function reports, which indicated he could complete tasks even with his reduced hearing and balance problems, and supported by Dr. Parker's mental evaluation and Dr. Brown's mental RFC assessment.  (Tr. 39-40, 179-187, 441-448, 463-466).

Having thoroughly reviewed the hearing transcript, along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the VE fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole.  *See e.g., Rappoport v. Sullivan*, 942 F.2d 1320, 1322 (8th Cir. 1991). The VE stated jobs existed in both the national and

regional economy for Plaintiff's vocational profile.  Such testimony, based on hypothetical questions consistent with the record, constitutes substantial evidence.  *See Goff v. Barnhart*, 421 F.3d 785, 794 (8th Cir. 2005).

**IV.    Conclusion:**

Based on the foregoing, the undersigned finds that the decision of the ALJ, is supported by substantial evidence and should be affirmed.  A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

**Dated this 14th day of July, 2015.**

/s/   Barry A. Bryant
HON. BARRY A. BRYANT
U.S. MAGISTRATE JUDGE